Bettman, J.
 

 Both sides in this litigation agree that the sole question at issue is whether the referendum petition here involved is valid. If it is valid, the offering of the bonds by the respondents to the officials in charge of the village sinking fund must await the outcome of the submission of the ordinance to a vote of the people of Ada. If, however, the referendum petition is invalid, the demurrer to the answer must be sustained and, the essential facts of the relator’s petition being admitted by the answer, the writ of mandamus must issue.
 

 Section 5, Article XVIII of the Ohio Constitution, relating to the acquisition by municipalities (including villages) of public utilities and referendum petitions in connection therewith, provides:
 

 
 *427
 
 “Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage. If within said thirty days a petition signed by ten per centum of the electors of the municipality shall be filed
 
 with the executive authority
 
 thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. The submission of any such question shall be governed by all the provisions of Section 8 of this Article as to the submission of the question of choosing a charter commission.” (Italics ours.)
 

 Section 8, Article XVIII, referred to in Section 5 above, requires — insofar as its provisions are here pertinent — that the legislative authority of the municipality shall by ordinance provide for the submission of such question to the electors and that “The ordinance providing for the submission of such question shall require that it be submitted to the electors at the next regular municipal election if one shall occur not less than sixty nor more than one hundred and twenty days after its passage; otherwise it shall provide for the submission of the question at a special election to be called and held within the time aforesaid.”
 

 In contrast to the foregoing specific constitutional procedure governing a referendum upon the acquisition by a municipality of a public utility, the procedure for a referendum upon municipal questions in general is governed by legislative enactment contained in Section 4227-2, General Code, the pertinent portions of which are:
 

 “When a petition signed by ten per cent of the electors of any municipal corporation shall have been filed
 
 with the city auditor or village clerh
 
 in such municipal
 
 *428
 
 corporation, within thirty days after any ordinance, or other measure shall have been filed with the mayor, or passed by the council of a village, ordering that such ordinance or measure be submitted to the electors of such municipal corporation for their approval or rejection, such city auditor or village clerk shall, after ten days, certify the petition to the board of deputy supervisors of elections of the county wherein such municipality is situated and said board shall cause to be submitted to the electors of such municipal corporation for their approval or rejection, such ordinance, or measure at the next succeeding regular or general election, in any year, occurring subsequent to forty days after the filing of such petition.” (Italics ours.)
 

 It is obvious from the language of the referendum petition here involved and is admitted by counsel for the village that those seeking a referendum intended to follow the statutory rather than the constitutional channel. And it is not and cannot be denied that the constitutional provisions relating to the acquisition of public utilities by municipalities and the provisions relating to referenda in connection therewith are self-executing and exclusive.
 
 State, ex rel. Mitchell,
 
 v.
 
 Council of Village of Milan,
 
 133 Ohio St., 499, 14 N. E. (2d), 772;
 
 State, ex rel. Portmann,
 
 v.
 
 City Council of City of Massillon,
 
 134 Ohio St., 113, 16 N. E. (2d), 214. But it is contended that, nonetheless, the referendum petition and the procedural steps taken in connection therewith satisfied the constitutional requirements as well, and that the petition is therefore valid.
 

 Upon examination of the referendum petition as set forth in the respondents’ answer, it is evident that the petition satisfies the
 
 identical
 
 requirements of both Constitution and statute in regard to (a) the time of filing, to wit, within thirty days after the village council passed the ordinance involved, and (b) the number and qualifications of the signers, to wit, ten
 
 *429
 
 per cent of the electors. But it is contended that in three respects the petitioners failed to meet and satisfy the constitutional requirements.
 

 First, it is argued that the filing of the referendum petition with the village clerk, as is specifically provided in the statutory procedure, does not constitute a filing with “the executive authority,” as required by the Constitution. “The executive authority,” as used in the Constitution, is a general term, and should not be taken to denote but a single individual. ‘ ‘ The executive authority” in its very nature is seldom wholly vested in one person. Had a single person been meant, a much more specific term could easily have been used, for example “the chief executive.” Furthermore, Section 4248, General Code — a part of the statutes setting up the general framework of village government — by express definition says:
 

 ‘ ‘
 
 The executive power and authority of villages shall be vested in a mayor, clerk, treasurer, marshal, street commissioner, and such other officers and departments thereof as are created by law.”
 

 From among these named officials who as a group exercise “the executive authority” shall it be ruled that the village clerk could not properly be selected by the petitioners as a person with whom to file their referendum petition?
 

 The powers and duties of the clerk of a village are set forth in Section 4280, General Code, as follows: “The clerk shall attend all meetings of council, and keep a record of its proceedings and of all rules, bylaws, resolutions and ordinances passed or adopted, which shall be subject to the inspection of all persons interested * * and in Section 4281: “The clerk shall keep the books of the village, exhibit accurate statements of all moneys received and expended of all the property owned by the village and the income derived therefrom and of all taxes and assessments * * Other powers and duties of the clerk consist
 
 *430
 
 of auditing village accounts (Section 4284, General Code), certifying to the Common Pleas Court the election of officers with power to discharge the duties of a justice of the peace, taking acknowledgments, and certifying depositions or affidavits (Section 4290, General Code).
 

 The foregoing statutory duties of the village clerk reinforce and justify the common belief that the village clerk is the logical official with whom to file important papers, and the natural conduit of information from the people to the officers and legislative .officials of village government. His records are open to public inspection (Section 4280, General Code), an attribute of his office which makes logical the filing with him of a paper, such as the present referendum petition, in which other citizens are bound to take an interest.
 

 The obvious purpose of the constitutional referendum procedure in requiring a filing with “the executive authority” is to insure the transmission of the petition to the legislative branch of village government — the council — whose duty under the Constitution it is to act upon the petition, and also to notify the chief administrative officials of the existence of a petition which, if proper, will delay their enforcement of the ordinance upon which the referendum is requested. Because the duties of the village clerk are the basically important ones of recording and transmitting information to and for the benefit of the council, the administrative officials and the public, wc deem the purposes of the constitutional provisions are fully met, and the village clerk being specifically named as one vested with part of “the executive authority” by Section 4248, General Code, we hold that the referendum petition in question was properly filed with him.
 

 The second objection raised by counsel to the validity of the referendum petition is that “the petition is for the ordinance to be submitted to the electors at the next succeeding general election occurring forty days
 
 *431
 
 after the filing of the petition, instead of at the next regular municipal election if one shall occur not less than sixty nor more than one hundred twenty days after its passage, otherwise at a special election called within said period, as provided by the Constitution.” The petition, it is true, does describe the statutory method of submission to the voters rather than the constitutional method. But Section 5, Article XVIII of the Constitution, requires only a petition “demanding a referendum” — and does not require a description
 
 in the petition
 
 of the proper election process. The Constitution, Section 8 of Article XVIII, lays upon the village council, not on the petitioners, the duty to provide by ordinance for an election at the proper time. The mere fact that the petitioners superfluously misdescribed the kind of election that council by ordinance should prescribe, does not justify invalidating their petition.
 

 Lastly, objection is made that the referendum petition “orders” that the ordinance be submitted to the electors instead of “demanding” such action. This objection, however, is clearly not of consequence. Although the Constitution does use the word “demanding,” there is nothing in the Constitution to require that the language of “demanding” be specifically repeated in the referendum petition itself. It is enough that the desire of the petitioners for a referendum is adequately conveyed by the language they used. The word “order” performs this function not less well than the word “demand.” The constitutional right of the electors to review by referendum the act of a village council voting to purchase a public utility must not go shipwreck against empty technicalities.
 

 This referendum petition, therefore, though cast in the statutory form, nevertheless, according to the allegations of the respondents’ answer, complied with the governing provisions of Sections 5 and 8 of Article XVIII of the Ohio Constitution. Respondents’ answer
 
 *432
 
 is therefore good and the demurrer to it is accordingly overruled. The relator not desiring to plead further, the writ of mandamus is denied.
 

 Writ denied.
 

 Weygandt, C. J., Turner, Williams, Hart and Zimmerman, JJ., concur.
 

 Matthias, J., not participating.