Jones, J.
 

 These causes were presented to this court upon general demurrers to the answers of the respondents. The demurrers search the record. The legal questions involved in each case are similar, and the disposition of Cause No. 25901 is dispositive of the other.
 

 Considering now Cause No. 25901. The answer of the respondents alleges that Ordinance 3389-C, passed in 1936, relating to the issue of anticipatory notes, was “not a new, separate or main step in the acquiring of said utility, but is merely carrying into effect the mandate of the electors expressed at said election, when Resolution 466-C was adopted.” The quoted language in the answer is a legal conclusion. 'However, it aptly states the legal question presented. Section 4, Article XVIII of the Constitution, empowers municipalities with the right to acquire, construct, own, lease and operate public utilities. Section 5 of the same article authorizes municipalities, proceeding under the former section, to act by ordinance, which ordinance becomes effective within thirty days if no petition is filed for referendum.
 

 At the threshold of this case, it may be well to state that we are confronted with a legal question which requires either the approval or disapproval of the conclusion reached by this court in
 
 State, ex rel. Diehl, Jr.,
 
 v.
 
 Abele,
 
 119 Ohio St., 210, 162 N. E., 807, decided by a divided court in 1928. That case held that where a municipality, acting under the foregoing constitutional provisions, proceeded to construct a public utility, “not only the initial ordinance authorizing
 
 *362
 
 such construction, but every other ordinance in furtherance of such construction, is subject to referendum.” The position taken by counsel for relator is that, when the utility is being acquired or constructed under the constitutional provisions hereinbefore referred to, each and every “step” taken by the commission in furtherance of the power plant project is subject to a referendum. He contends that Ordinances 3389-C and 3390-C, one pertaining to the issue of anticipatory notes, the other pertaining to the survey of the power plant project, were steps necessary to be taken in furtherance of the purpose stated in the initial ordinance, and that both were subject to referendum under the principle announced in the
 
 Abele case, supra;
 
 and since it must be conceded that the purposes of both ordinances were incidental to and in furtherance of the project adopted in Ordinanbe 3123-C, this case requires a re-examination of
 
 State, ex rel. Diehl, Jr.,
 
 v.
 
 Abele et al., supra.
 
 The amount to be expended was not named in the initial ordinance of August 7, 3933; but on the same day the commission passed a resolution declaring the necessity of issuing bonds in the amount of $1,400,000 for the construction or purchase of a municipal power plant and its equipment, and authorizing a submission of the question to the voters of the city. .Later, still acting pursuant to the purpose stated in the last named ordinance, full and complete notice of the contemplated project, including detailed information relative to the bonds to be issued, was given to the electorate, more than 65% of whom voted for the issuing of the bonds. Under this record, therefore, there was a referendum of the people upon the construction or purchase of the utility as well as upon the amount of bonds which were to be issued for its payment.
 

 "When, acting under the provisions of Sections 4 and 5 of Article XVIII of the Ohio Constitution, the City Commission passed Ordinance 3123-C, authorizing the
 
 *363
 
 acquirement or construction of a public utility, accompanied by a resolution of the same date notifying the electors of the necessity of issuing bonds in a definite amount, of the levying of a tax for the payment thereof, and giving to the public the details described in the notice; and when such resolution authorized the submission of the question to a vote of the electors of the city, we think that such ordinance was subject to referendum; and, since the time of the passage of the ordinance and resolution coincided, there was preserved to petitioners the thirty-day period after the passage of the ordinance for referendum action. Later ordinances incidental to and in furtherance of such project are not subject to referendum under the provisions of Section 5, Article XVIII of the state Constitution. That section refers to but one ordinance, and that is an ordinance providing for the acquirement of a public utility. The use of the phrase, “no such ordinance,” implies that an ordinance initiating the acquirement or construction of the utility, and not successive ordinances in furtherance of that purpose, is subject to referendum. The legal contention of the relator that each successive step in the furtherance of the public utility project is open to referendum might often lead to anomalous situations which, in our judgment, the Constitution did not intend to create. Where an ordinance has been passed providing for the acquirement or construction of a public utility and the method of payment therefor, if the contention of counsel for the relator should be upheld, later ordinance contracts adopted for the construction of the utility could be thwarted by referenda on the ordinance contracts. For example: If, in the instant case, contracts for the purchase of land and the completion of buildings had been fully executed and a later ordinance providing for contracts for the construction of transmission lines should be adopted, under the theory advanced by counsel for relator the entire project could
 
 *364
 
 be thwarted by an adverse referendum vote on the last ordinance. This is in effect the judicial pronouncement made in tbe
 
 Abele case, supra.
 
 For the reasons stated, we disapprove and overrule that case.
 

 In each of these cases the demurrer to the answer of the respondents will be overruled and the writs asked for will be denied.
 

 Writs denied.
 

 Weygandt, C. J., Stephenson, Williams and. Matthias, JJ., concur.