OPINION
{¶ 1} Relators-appellants, Active USA, Inc., formerly known as Jupiter Realty Corp. ("Jupiter"), and Omni Manor, Inc. ("Omni"), appeal from a judgment of the Franklin County Court of Common Pleas, affirming a decision of the Ohio Bureau of Workers' Compensation ("BWC") that denied Jupiter and Omni's request for adjustments to payments associated with grants of self-insured privileges. Respondent-appellee, James Conrad, Administrator of the Ohio Bureau of Workers' Compensation ("BWC Administrator"), cross-appeals.
 {¶ 2} Active USA, Inc., formerly known as Jupiter Realty Corporation[1] was granted self-insured status effective August 1, 1993. Joint Stipulation of Record No. 2. (Order of BWC Self-Insured Review Panel). Omni[2] was granted self-insured status effective February 1, 1994. Id.
 {¶ 3} In correspondence dated November 23, 1999, Jupiter inquired of the BWC regarding costs associated with grants of self-insured privileges to its subsidiaries and to Omni. In its inquiry, Jupiter suggested that it and Omni paid amounts in excess of their obligations when they obtained self-insured status. The matter was subsequently heard before the BWC's Self-Insured Review Panel ("SIRP").
 {¶ 4} On August, 9, 2000, SIRP issued an order that denied Jupiter and Omni's request for adjustments in state fund premiums, which were paid while participating in the state insurance fund, and in buy-out amounts, which were paid at the time self-insurance status was granted. In correspondence dated August 31, 2000, Jupiter and Omni appealed the SIRP order to the BWC Administrator. On January 2, 2001, a BWC Administrator's designee affirmed the SIRP's decision and order.
 {¶ 5} Subsequently, on January 17, 2001, Jupiter and Omni filed a complaint in mandamus in the Franklin County Court of Common Pleas and, alternatively, Jupiter and Omni sought an administrative appeal pursuant to R.C. 119.12.
 {¶ 6} On February 9, 2001, the BWC Administrator moved to dismiss Jupiter and Omni's administrative appeal for lack of subject matter jurisdiction. On October 30, 2001, the common pleas court granted the BWC Administrator's motion. However, at the time it dismissed Jupiter and Omni's administrative appeal, the common pleas court left undisturbed Jupiter and Omni's application for a writ of mandamus.
 {¶ 7} Later, on December 11, 2002, finding the BWC Administrator did not have a clear legal duty to make the requested adjustments, the common pleas court denied Jupiter and Omni's application for a writ of mandamus.
 {¶ 8} Jupiter and Omni timely appeal and assign the following errors:
1. The trial court erred in dismissing the Second Count of Relators-Appellants', Active USA, Inc.'s and Omni Manor's, Complaint, an appeal brought pursuant to Ohio Revised Code Section 119.12 of the Administrative Appeal Act.
2. The trial court erred in denying Relators-Appellants,' Active USA, Inc., and Omni Manor, request for a writ of mandamus.
 {¶ 9} The BWC Administrator cross-appeals and assigns the following errors:
1. The court erred in stating that the BWC "represented that the fund was insolvent, but in actuality, it was solvent," and that the Employers' buy-outs were erroneously calculated.
2. The court erred in finding that the BWC abused its discretion in relying on the third paragraph of the buy-out agreements, which made reference to Ohio Adm.Code" 4123-19-03(N)(1)."
 {¶ 10} Jupiter and Omni's first assignment of error asserts the common pleas court erred by dismissing Jupiter and Omni's administrative appeal brought under R.C. 119.12.
 {¶ 11} Pursuant to R.C. 119.01(A)(1),[3] in effect at all times pertinent to the proceedings:
Sections 119.01 to 119.13 of the Revised Code do not apply to actions of the industrial commission or the bureau of workers' compensation under sections 4123.01 to 4123.94 of the Revised Code with respect to all matters of adjudication, and to the actions of the industrial commission and the bureau of workers' compensation under division (D) of section4121.32 and sections 4123.29, 4123.34, 4123.341, 4123.342, 4123.40,4123.411, 4123.44, 4123.442, and divisions (B), (C), and (E) of section4131.14 of the Revised Code.
 {¶ 12} Here, Jupiter and Omni contend the BWC Administrator's designee relied upon former Ohio Adm. Code 4123-19-14 when he affirmed the SIRP's decision that denied Jupiter and Omni's request. See BWC decision dated January 2, 2001 ("[p]ursuant to Ohio Administrative Code Rule 4123-19-14, the Administrator's Designee considered the appeal of two employers to an order issued by the Self-Insured Review Panel following an informal conference held on May 10, 2000").
 {¶ 13} Jupiter and Omni argue Ohio Adm. Code 4123-19-14 is derivative of R.C. 4121.121, a section not specified in the precluding language of R.C. 119.01(A)(1). Therefore, because Ohio Adm. Code 4123-19-14
is derivative of a section that is not specified in the precluding language of R.C. 119.01(A)(1), Jupiter and Omni reason their appeal under R.C. 119.12 was permissible and the common pleas court erred in dismissing their administrative appeal. See, also, R.C. 119.12;[4]
R.C. 119.01(D);[5] R.C. 119.01(F).[6]
 {¶ 14} For its part, the BWC Administrator contends the common pleas court correctly determined that Ohio Adm. Code 4123-19-14 is derivative of R.C. Chapter 4123 and, therefore, according to R.C.119.01(A)(1), an appeal under R.C. 119.12 was precluded.
 {¶ 15} Based on our review, we find both R.C. Chapters 4121 and 4123 grant rulemaking authority to the BWC and its administrator. See, e.g., R.C. 4121.121(B)(20); 4121.13(E); 4121.18; 4121.30; 4121.31; 4121.32;4121.43; 4121.441; 4123.05; 4123.32; 4123.64(B).
 {¶ 16} Pursuant to R.C. 4121.121:[7]
(B) The administrator [of the BWC] is responsible for the management of the bureau of workers' compensation and for the discharge of all administrative duties imposed upon the administrator in this chapter and Chapters 4123., 4127., and 4131. of the Revised Code, and in the discharge thereof shall do all of the following:
* * *
(20) Adopt, with the advice and consent of the oversight commission, rules for the operation of the bureau.
 {¶ 17} According to former R.C. 4123.32,[8] in effect in 1999 when Jupiter and Omni sought adjustments from the BWC:
The administrator of workers' compensation, with the advice and consent of the workers' compensation oversight commission, shall adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund including all of the following:
(A) A rule providing that in the event there is developed as of any given rate revision date a surplus of earned premium over all loses which, in the judgment of the administrator, is larger than is necessary adequately to safeguard the solvency of the fund, the administrator may return such excess surplus to the subscriber to the fund in either the form of cash refunds or a reduction of future premiums.
 {¶ 18} Although both R.C. 4121.121 and 4123.32 establish rulemaking authority for the BWC and its administrator, neither statutory provision specifically addresses whether Ohio Adm. Code 4123-19-14 is derivative to rulemaking authority contained in R.C. Chapter 4121 or Chapter 4123.
 {¶ 19} In Zageris v. Whitehall (1991), 72 Ohio App.3d 178, 184, dismissed, jurisdictional motion overruled, 61 Ohio St.3d 1409, this court observed:
The foremost object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it. * * * The interpretation of a statute starts and ends with the words chosen by the legislative body, but it is not limited to those words alone, because the whole context of the enactment must be considered. * * * The process of interpretation requires: (1) a decision about the purpose to be attributed to the statutes; and (2) a decision about the meaning of the legislative body and words that will carry out that purpose. * * *
Therefore, construing Zageris, we must consider the context, meaning, and purpose of the administrative rule at issue.
 {¶ 20} Ohio Adm. Code 4123-19-14, which pertains to the BWC's Self-Insured Review Panel, became effective May 9, 1990, and was recently amended effective December 17, 2001.
 {¶ 21} According to former Ohio Adm. Code 4123-19-14:
(A) The administrator of the bureau of workers' compensation may delegate the authority granted to the administrator under Chapters 4121. and 4123. of the Revised Code for determining self-insuring employer matters as may be authorized. For this purpose, the administrator may appoint a self-insured review panel to provide advice to the administrator and the bureau self-insuring employer section and provide employers with hearings on matters referred to the panel.
* * *
(F) The administrator may authorize the review panel to consider the following matters:
(1) Granting or denying an application for the privilege to pay compensation, etc., directly;
(2) Annual renewals of self-insured status;
(3) Revocation of a self-insuring employer's status;
(4) Issues of a self-insuring employer's adequacy of contribution to the self-insuring employers' guaranty fund or need for additional security under 4123.351 of the Revised Code;
(5) Any other self-insuring employer matter as authorized and delegated by the administrator under Chapters 4121. and 4123. of the Revised Code.
 {¶ 22} Because former Ohio Adm. Code 4123-19-14(A) concerns the delegation of authority for determining self-insuring employer matters, we find former Ohio Adm. Code 4123-19-14 is consistent with R.C.4121.121(B)(20), which provides for the BWC administrator to adopt rules for the operation of the bureau. Therefore, to this limited extent, we agree with Jupiter and Omni that former Ohio Adm. Code 4123-19-14 is derivative of R.C. Chapter 4121.
 {¶ 23} However, we also find Ohio Adm. Code 4123-19-14 is consistent with R.C. 4123.32, which grants rulemaking authority to the BWC Administrator with respect to the collection, maintenance, and disbursements of the state insurance fund. Additionally, we find Ohio Adm. Code 4123-19-14 addresses substantive matters contained in R.C.4123.35 to 4123.352, which pertain to matters related to self-insurers. Consequently, we also agree with the BWC Administrator that former Ohio Adm. Code 4123-19-14 is derivative of R.C. Chapter 4123.
 {¶ 24} Because former Ohio Adm. Code 4123-19-14 pertains tosubstantive matters that concern self-insurers, see, e.g., R.C. 4123.35
to 4123.352, and, because, pursuant to R.C. 119.01(A)(1), which was in effect at all times pertinent to the proceedings, "[s]ections 119.01 to119.13 of the Revised Code do not apply to actions of * * * the bureau of workers' compensation under sections 4123.01 to 4123.94 of the Revised Code with respect to all matters of adjudication," we conclude Jupiter and Omni were precluded from appealing an adverse BWC decision pursuant to R.C. 119.12. Concluding Jupiter and Omni were precluded from appealing an adverse BWC decision pursuant to R.C. 119.12, we therefore hold the common pleas court correctly dismissed Jupiter and Omni's administrative appeal that was brought pursuant to R.C. 119.12 after the common pleas court found it lacked subject matter jurisdiction.
 {¶ 25} Accordingly, Jupiter and Omni's first assignment of error is overruled.
 {¶ 26} Jupiter and Omni's second assignment of error asserts the common pleas court erred when it denied Jupiter and Omni's request for a writ of mandamus.
 {¶ 27} R.C. 2731.01 defines "mandamus" as "a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." "[M]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body." State ex rel. Pipoly v. State Teachers Retirement Sys.,95 Ohio St.3d 327, 2002-Ohio-2219, at ¶ 14. "`[A]buse of discretion' means an unreasonable, arbitrary, or unconscionable decision." Id., citing State ex rel. Elsass v. Shelby Cty. Bd. of Commrs. (2001),92 Ohio St.3d 529, 533.
 {¶ 28} To be entitled to a writ of mandamus, a relator "must show (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law." State ex rel. Harris v. Rhodes (1978), 54 Ohio St.2d 41, 42, citing State ex rel. Natl. City Bank v. Bd. of Edn. (1977),52 Ohio St.2d 81. See, also, R.C. 2731.05 ("writ of mandamus must not be issued when there is a plain and adequate remedy in the ordinary course of the law").
 {¶ 29} Pursuant to R.C. 4123.35(B), if specified conditions are met, the BWC may grant the privilege of self-insured status to employers. See, also, Ohio Adm. Code 4123-9-01(A)(4); St. Paul Fire Marine Ins. Co. v. Indus. Comm. (1987), 30 Ohio St.3d 17, 19
("[t]he legislature intended for self-insured status to be a `privilege'"). Generally, to be granted self-insured status, an employer is required to make a "buy-out" according to factors established by the BWC. See, generally, Ohio Adm. Code 4123-19-03; Ohio Adm. Code 4123-17-40.
 {¶ 30} Jupiter and Omni assert at the time Jupiter and Omni were granted the privilege of self-insured status, Jupiter and Omni were charged amounts in excess of their rightful exposure because, according to Jupiter and Omni's investigation, the solvency of the state insurance fund, a factor relied upon in formulating a buy-out amount, was erroneously characterized. See former Ohio Adm. Code 4123-19-03(M).[9]
According to Jupiter and Omni, at the time of Jupiter and Omni's grant of self-insured status, the state insurance fund was incorrectly deemed insolvent, when, in retrospect, the state insurance fund was solvent.
 {¶ 31} For its part, the BWC Administrator asserts its buy-out calculations were based upon the applicable law and contained no computational error.
 {¶ 32} Here, Jupiter and Omni argue the BWC Administrator is a fiduciary of the state insurance fund, and therefore he has a duty to correct any mistake that results in a misapplication or misappropriation of any part of the fund. See, e.g., State ex rel. Weimer v. Indus. Comm.
(1980), 62 Ohio St.2d 159, 160-161 (observing the Industrial Commission is a fiduciary of the state insurance fund). Additionally, Jupiter and Omni also rely on Ohio Adm. Code 4123-17-10, which became effective May 1, 2000 and, in pertinent part, provides:[10]
* * * Pursuant to section 4123.32 of the Revised Code, in the event there is developed as of any given rate revision date a surplus of earned premium overall loses which, in the judgment of the administrator, is larger than is necessary adequately to safeguard the solvency of the fund, the administrator may return such excess surplus to the subscriber to the fund in either the form of cash refunds or a reduction of future premiums. The administrator, with the advice and consent of the workers' compensation oversight commission, shall have the discretion and authority to determine whether there is an excess surplus of premium; whether to return the excess surplus to employers; the nature of the cash refunds or reduction of future premiums; the employers who are subscribers to the state insurance fund who are eligible for the cash refunds or reduction of future premiums; the applicable date of the cash refunds or reduction of future premiums; and any other issues involving cash refunds or reduction of future premiums due to an excess surplus of earned premium.
 {¶ 33} Because Ohio Adm. Code 4123-17-10, upon which Jupiter and Omni rely, was issued after Jupiter's and Omni's grants of self-insured status, its applicability may be open to question. See, e.g., R.C. 1.48
(operation of a statute presumed prospective unless expressly made retrospective). But, see, State ex rel. DeBoe v. Indus. Comm. (1954),161 Ohio St. 67, paragraph one of the syllabus ("[w]here by statutory authority an administrative agency * * * promulgates rules and regulations governing its activities and procedure, such rules are valid and enforceable unless they are unreasonable or in conflict with statutory enactments covering the same subject matter"). Therefore, absent limiting language in Ohio Adm. Code 4123-17-10 that precludes retrospective application, for the purpose of this analysis, we assume Ohio Adm. Code 4123-17-10 may be retrospectively applied. See, also, former R.C. 4123.32 (granting authority to administrator of BWC to adopt rules related to collection, maintenance, and disbursements of the state insurance fund.
 {¶ 34} In this case, although the BWC Administrator has a fiduciary duty to manage the state insurance fund, see, e.g., Weimer, supra, the manner in which an administrator exercises this fiduciary duty is discretionary. See, e.g., former Ohio Adm. Code 4123-17-10.
 {¶ 35} Generally, "`[t]he extraordinary writ of mandamus cannot be used to control the exercise of administrative or legislative discretion.' * * * `Absent an abuse of discretion, mandamus cannot compel a public body or official to act in a certain way on a discretionary matter.' * * * The term `abuse of discretion' implies an attitude that is unreasonable, arbitrary or unconscionable." State ex re. Crabtree v.Franklin Cty. Bd. of Health (1997), 77 Ohio St.3d 247, 249, reconsideration denied, 78 Ohio St.3d 1415. (Citations omitted.)
 {¶ 36} Accordingly, we must consider whether the BWC Administrator's denial of Jupiter and Omni's request constituted an abuse of discretion of the BWC Administrator's fiduciary duty to manage the state insurance fund.
 {¶ 37} Because the BWC Administrator's first assignment of error on cross-appeal, which concerns the common pleas court's finding that the state insurance fund was solvent at the time Jupiter and Omni sought self-insured status, is relevant to the discussion of abuse of discretion, we also address the BWC Administrator's first assignment of error on cross-appeal here.
 {¶ 38} In its decision and entry denying Jupiter and Omni's application for a writ of mandamus, the common pleas court determined that "[a]t the time of the buy-out, the Bureau represented that the fund was insolvent, but in actuality, it was solvent. Consequently, the Appellants [sic] buy-out amount was greater than it would have been had the Bureau correctly represented the solvency." Decision, at 1.
 {¶ 39} Here, the common pleas court's factual finding appears based upon the unsworn testimony of Ralph Scoles, corporate director of risk management for Jupiter Transportation, and upon the unsworn testimony of Kay Flowers, CEO of Self Insured Management Company and third-party claims administrator for both Jupiter and Omni. Both Scoles and Flowers testified at an informal May 10, 2000 SIRP hearing. At that hearing, Scoles opined about the solvency of the state insurance fund at the time Jupiter and Omni sought self-insured status. See Joint Stipulation of Record, No. 4., Tr. 8-10. In his testimony, Scoles referenced "handouts"; however, no handouts were included with the transcript as contained in the joint stipulation of record. See Joint Stipulation of Record, No. 4., Tr. 8-9 (Scoles testifying that "[t]he other thing is that when Jupiter and Omni became self-insured, the impression of the Bureau at that time was that they there were insolvent. And from what we have discovered — and we have some handouts here. From what we have discovered, at the time that Jupiter and Omni became self-insured, the Bureau was solvent"); see, also, Joint Stipulation of Record, No. 4, Tr. 13-15 (unsworn testimony of Kay Flowers).
 {¶ 40} At the May 10, 2000 SIRP hearing, the BWC did not present evidence to rebut the unsworn testimony of Scoles and Flowers.
 {¶ 41} After reviewing the joint stipulation of record, including the transcript of the May 10, 2000 SIRP hearing, we conclude the common pleas court's finding that the state insurance fund was solvent at the time Jupiter and Omni sought self-insured status is based on evidence of dubious value, namely, unsworn testimony.
 {¶ 42} As one appellate court has observed:
As the Supreme Court of Ohio noted in Arcaro Bros. Builders, Inc. v.N. College Hill Zoning Bd. of Appeals (1966), 7 Ohio St.2d 32, 33, 36 O.O.2d 18, 19, 218 N.E.2d 179, 180, R.C. 2319.01 provides that testimony may be by affidavit, deposition or oral examination. In order to have any evidentiary value, the witnesses' affidavit, deposition or oral testimony must be under oath. Id. at 33-34, 36 O.O.2d 15 18-19,218 N.E.2d at 179-180; see, also, R.C. 2317.30. Although the administration of the oath at trial or at an administrative hearing may be expressly or impliedly waived, when no such waiver is apparent on the record, unsworn testimony cannot provide the preponderance of substantial, reliable and probative evidence necessary to support an administrative decision. Dudukovich v.Lorain Metro. Hous. Auth. (1979), 58 Ohio St.2d 202, 206, 12 O.O.3d 198, 201, 389 N.E.2d 113, 116.
Gibralter Mausoleum Corp. v. Toledo (1995), 106 Ohio App.3d 80, 85.
 {¶ 43} Because Scoles' unsworn testimony and Flowers' unsworn testimony about the solvency of the state insurance fund at the time Jupiter and Omni sought self-insured status has dubious evidentiary value, see Gibralter Mausoleum Corp., at 85, and because "handouts" that were presented to SIRP were not included with the joint stipulated record and therefore were unavailable for judicial review, we cannot conclude, under these circumstances, the BWC Administrator's designee's denial of Jupiter and Omni's request was unreasonable, arbitrary, or unconscionable.
 {¶ 44} Finding the BWC Administrator, through his designee, did not abuse his discretion in exercising his fiduciary duty, we therefore conclude the common pleas court did not err in denying Jupiter and Omni's application for a writ of mandamus. However, because the common pleas court apparently relied upon unsworn testimony when it concluded the state insurance fund was solvent at the time Jupiter and Omni sought self-insured status, we find the common pleas court erred when it determined the state insurance fund was solvent at the time Jupiter and Omni sought self-insured status.
 {¶ 45} Accordingly, Jupiter and Omni's second assignment of error is overruled, and the BWC Administrator's first assignment of error on cross-appeal is sustained.
 {¶ 46} Having overruled Jupiter and Omni's first and second assignments of error, and having sustained the BWC Administrator's first assignment of error on cross-appeal, we now consider the BWC' Administrator's second assignment of error on cross-appeal.
 {¶ 47} On cross-appeal, the BWC Administrator's second assignment of error asserts the common pleas court erred in finding that the BWC abused its discretion in relying on the third paragraph of the buy-out agreements, which made reference to Ohio Adm. Code 4123-19-03(N)(1).
 {¶ 48} Here, paragraph three, section A, of Jupiter's and Omni's agreements[11] with the BWC provided the following:
Future increases or decreases based upon protest letters, applications for handicap reimbursement or other requests expressly set forth herein of which the employer, its assigns and successors in interest has actual or constructive knowledge, filed with the Ohio Bureau of Workers' Compensation prior to this Agreement. The employer expressly agrees that any protest letters, applications for handicap reimbursement, or other requests effecting the employer's State Fund risk experience filed subsequent to this Agreement shall be considered invalid for both rebate of premium on State Fund experience and for calculation of the buyout amount as described in Rule 4123-19-03 (N)(1) of the rules of the Ohio Bureau of Workers' Compensation.
 {¶ 49} In its decision and entry, the common pleas court stated:
* * * The parties entered into a buy-out agreement, which the Appellees [sic] contend relinquished any opportunity to subsequently protest the amount of the buy-out calculation. The SIRP agreed and found that the Appellants waived their right to contest the amount of the buy-out. However, Appellants argue that the supposed invalidating language of the agreement does not apply to the instant case. * * * Rather, the waiver provision applies to the "calculation of the buyout amount as described inrule 4123-19-03(N)(1) of the rules of the Ohio Bureau of Workers' Compensation." Stipulation No. 11 (Emphasis added.) Appellants seek a rebate of the buy-out amount cited in OAC 4123-19-03(M). And, to further demonstrate that waiver language relied upon by Appellees is inapplicable, the Appellants note that in 1993, when the agreement was entered into, OAC 4123-19-03(N)(1) did not exist. The Appellees do not rebut this point; they simply write "[sic]" after the "(N)". Thus, to the extent that the SIRP and Bureau relied upon the third paragraph of the buy-out agreement, the Court finds that it abused its discretion. Stipulation No. 11.
Decision, at 3-4. (Footnote omitted; emphasis sic.)
 {¶ 50} The BWC Administrator contends the agreements' reference to "(N)(1)" of Ohio Adm. Code 4123-19-03 is an obvious typographical error and the agreements should have referenced "(M)(1)" instead. See former Ohio Adm. Code 4123-19-03(M)(1).[12]
 {¶ 51} Here, in making their determinations both SIRP and the BWC Administrator's designee relied upon agreements that referenced a non-existent administrative regulation, Ohio Adm. Code 4123-19-03(N)(1). Although reasonable minds may differ, under these circumstances, we cannot conclude the common pleas court erred in finding the BWC Administrator abused his discretion.
 {¶ 52} Therefore, the BWC Administrator's second assignment of error on cross-appeal is not persuasive and overruled.
 {¶ 53} Accordingly, because the common pleas court correctly dismissed Jupiter and Omni's R.C. Chapter 119 appeal and correctly denied Jupiter and Omni's application for a writ of mandamus, we therefore affirm the judgment of the common pleas court, although we affirm for different reasons than those relied upon by the common pleas court. SeeSutterfield v. Sutterfield (July 30, 1993), Adams App. No. CA545, jurisdictional motion overruled, 68 Ohio St.3d 1409, citing Joyce v.Gen. Motors Corp. (1990), 49 Ohio St.3d 93, 96, rehearing denied,50 Ohio St.3d 709, and Hamm v. Heritage Professional Serv., Inc. (Apr. 9, 1993), Scioto App. No. 92CA2082 ("[a]n appellate court reviews judgments and will not reverse a correct judgment merely because the decision was based upon an erroneous reason").
 {¶ 54} For the foregoing reasons, both of Jupiter and Omni's assignments of error are overruled; cross-appellant BWC Administrator's first assignment of error is sustained, and his second assignment of error is overruled; and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and BROWN, JJ., Concur.
[1] In its petition to the BWC regarding costs associated with a grant of self-insured status, Jupiter stated that the subject of its petition was Jupiter Corporation Transportation Systems. See Joint Stipulation of Record No. 1, Position Statement. Jupiter Corporation Transportation Systems is an apparent subsidiary of Jupiter Realty Corporation. Jupiter Corporation Transportation Systems had four Ohio subsidiaries that were granted self-insured privileges: Kenosha Auto Transport Corp.; Dallas and Mavis Forwarding Co., Inc.; Provincial American Truck Transporters, Inc.; and Provincial American Transporter Services, Inc.
[2] Omni had four Ohio subsidiaries that were the subject of its petition to the BWC regarding costs associated with the grant of self-insured privileges: Omni Manor, Inc.; Doylestown Health Care Center; O'Brien Memorial, Inc.; and Miller Memorial, Inc.
[3] Am.Sub.S.B. No. 138 amended R.C. 119.01(A)(1) effective June 18, 2002. Sub.H.B. No. 386 amended R.C. 119.01(A)(1) effective May 24, 2002. Am.Sub.H.B. No. 470, 148 Ohio Laws, Part II, 4045, rewrote R.C. 119(A) effective July 1, 2000.
[4] R.C. 119.12, which was in effect at all times pertinent to the proceedings, provides, in pertinent part, that "[a]ny party adversely affected by an order of an agency issued pursuant to any other adjudication may appeal to the court of common pleas of Franklin county * * *."
[5] R.C. 119.01(D), which was in effect at all times pertinent to the proceedings, defines "adjudication" as "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include the issuance of a license in response to an application with respect to which no question is raised, nor other acts of a ministerial nature."
[6] R.C. 119.01(F), which was in effect at all times pertinent to the proceedings, defines "person" as "a person, firm, corporation, association, or partnership."
[7] Sub.H.B. No. 91 amended R.C. 4121.121 effective August 1, 2003; however, division (B)(20) was unaffected.
[8] Am.Sub.S.B. No. 223 amended R.C. 4123.32(A) effective March 14, 2003. According to the accompanying editorial "historical and statutory notes," Am.Sub.S.B. No. 223 "deleted `future' preceding `premiums' in division (A); added, `regardless of when the premium obligations have accrued' to division (A); and made changes to reflect gender neutral language."
[9] Former Ohio Adm. Code 4123-19-03(M), in pertinent part, provided:
If a state insurance fund employer or a succeeding employer, as described in rule 4123-17-02 of the Administrative Code, applies for the privilege of paying compensation, etc., directly, by transferring from state fund to self-insurance, the actuary of the bureau shall determine the amount of the liability of such employer to the bureau for its proportionate share of any deficit in the fund. To determine an employer's liability under this rule, the actuary of the bureau shall develop a set of factors to be applied to the pure premium paid by an employer on a payroll for a seven year period, as described below. The factors shall be based on the full past experience of the commission and bureau as reflected in the most recent calendar year end audited combined financial statement of the commission and bureau, and shall also accommodate any projected change in the financial condition of the fund for the current calendar year, or any additional period for which an audited combined financial state is unavailable. * * * In the event the audited combined financial statement of the commission and bureau reveals that no deficit exists, or in the event the application of the factors adopted by rule4123-17-40 of the Administrative Code yields a negative number, the employer will incur no liability under this paragraph, but will not receive any refund for prior premiums paid except for those matters specifically addressed in paragraph (M)(2) of this rule. * * *
[10] Ohio Adm. Code 4123-17-10 was also amended effective April 28, 2003. See 2002-03 Ohio Monthly Record 2429.
[11] See Joint Stipulation of Record, No. 11. Buy-out agreements were with the following parties: Omni, Inc., agreement entered July 1, 1993; Dallas and Mavis Forwarding Co., Inc., agreement entered August 24, 1993; Provincial-American Transporter Services, Inc., agreement entered August 24, 1993; Provincial-American Truck Transporter, Inc., agreement entered August 24, 1993; and Kenosha Auto Transport Corp., agreement entered August 24, 1993. Paragraph three, section A of each of these agreements contained identical language.
[12] Former Ohio Adm. Code 4123-19-03(M)(1) provided:
Within thirty days of the receipt from the employer of the necessary forms and of a separate statement of assets and liabilities, the bureau will forward to the employer a letter stating the amount of liability (if any) due the state fund as outlined above and a copy of the computation of such liability (if any).